Good morning, everybody. Morning. Good morning. We'll call the first case for the morning. This is appeal number 20 dash 1656. Karen Krebs versus Michael Graveley. Ms. Nicholas, we'll begin with you. Morning, may it please the court. The ability to choose one's name is intimately related to the core values the First Amendment protects self expression, self determination and personal autonomy. Wisconsin has adopted a law that makes it a felony offense for an individual who's required to register as a sex offender to seek to legally change his or her name. Plaintiff in this case, Karen Krebs is a transgender woman who has used the name Karen since 1999. But because of a conviction that is nearly 30 years old, she is permanently prohibited from obtaining government recognition for her chosen name. Miss Nicholas, forgive me, this is Judge Rovner, but I'd like to start you off in this way, please. The district court based its decision on the failure to provide legal support for the argument that the law implicated speech and expression under the First Amendment. So on appeal, it seems to me that the only issue before us is whether the court was wrong in determining that the legal issue was not developed. But your brief does not point to anything. Or I should say, I think you do not point to anything in the brief below that would show the issue was developed. So we have, I think, a bit of a problem. Why? Why shouldn't we affirm the court given that you have not addressed the basis for the court's decision? Unless I have really missed something.  Okay, so I'm going to go ahead and move on to the next item. And that is the court's conclusion that the First Amendment implications of the ability to change one's name were not developed below. Ms. Krebs' testimony set forth in very vivid terms the expressive implications of her inability to by a name that she considers essential to her self-expression and her identity. And quite honestly, in the briefing below, neither party gave significant attention to that threshold issue of whether there was a First Amendment right to control one's own name, because it frankly seemed uncontroversial. Courts routinely apply the First Amendment to denials of name change petitions. These cases often make the news. For example, if someone wants to adopt a name that uses special characters or unusual spellings or implies nobility, the First Amendment is routinely applied to those decisions to deny name changes. So it didn't seem to either party in the briefing below that the threshold issue of whether the First Amendment protects one's ability to control his or her own name was really in dispute. And tell me this, was the district court wrong in holding that all that was cited was a law journal article as support for the argument that regulating a person's name implicates the First Amendment protection for speech and expression? Yes, the district court was wrong. And I continue... Will you cite me to the law that you cited? I mean, for example, we cited two cases that... Yeah, I'm sorry. I'm sorry, Your Honor. We cited two laws that arose in the prison context where a prisoner wanted to change their name for religious purposes to adopt a religiously motivated name. That appeared in the briefing below. We also cited case law having to do with the compelled speech doctrine and how what appears on And that was something that was given a lot of attention in the briefing below. Application of the Supreme Court's compelled speech jurisprudence, including Woolley v. Maynard, to the circumstances in this case. And so I think the district court's decision is both wrong and puzzling. And I think that the confusion arose from what I've only been able to interpret as a very cramped view of this hard distinction between what you call yourself and whether you are entitled to obtain legal recognition. Well, you know, the district court explicitly stated that it was not holding that the claim had no legal merit, but only was a failure to present any legal argument. Well, I would invite the court to look at the briefing below, which is, um, Well, I believe we all did. Yes. And it's in, um, you know, to a large extent, it's similar to what was presented to this court in terms of the legal theories. It's more than similar. It's almost verbatim. Right. And so I think that the district court took this view that there needed to be some different or separate authority to prove that there is a First Amendment interest involved at all in the right to obtain government recognition for a person's chosen name. Um, and our briefing below, and I hope here in front of this court, um, developed, at some length, the for Ms. Krebs, um, to go about basic functions of daily life, she is compelled to use and respond to the name Kenneth Krebs with, to which she strongly objects and which she does not identify. And that is, um, as the Middle District of Alabama and the recent Louisiana Supreme Court decision, um, held, they believe that what appears on a driver's license is something that a person doesn't really have a choice, but to communicate to others with whom they interact in the world. And as a result of the legal prohibition on, um, Ms. Krebs being able to change her name formally, she is functionally obligated to disclose and respond to the name Kenneth. Um, she cannot go about, uh, fulfilling her duties, like paying for taxes, exercising her rights, like voting or engaging in tasks of daily life, like going to the doctor, paying her bills, applying for a job. Ms. Nichols, I would be wrong if I worry that your adding a section, uh, to, uh, the brief here, uh, which sets forth, uh, the legal argument that was missing, uh, below, uh, which is case support for the argument that the law implicated, uh, speech interests and is analogous to other cases. I would be wrong if I thought that that's no longer the relevant issue, but that rather the issue before us is whether the court erred in determining that she had failed to develop that argument in the court below. And so the court below could not consider it. I would be wrong. I'm not sure I quite understand the question. Um, but if I'm understanding you correctly, um, I would agree with you that the district court was wrong to conclude that the arguments concerning the first amendment implications of one's ability or inability to legally change their name were not developed below. Um, I believe that normally have to address the basis for a district court's decision. Um, of, of course. And I believe that's what we've done. Um, here is really to point out that I think there's a false distinction being drawn between the ability to identify by a name and the ability to obtain legal recognition for the name. That's the only thing I can conclude from the district court's decision is that the district court saw, um, there being a great difference between the two and perhaps recognizing that informally identifying by Karen is enough. That is all that's protected by the first amendment. Whereas the ability to legally change one's name, um, perhaps falls outside that, uh, the protection of the first amendment. And for all the reasons set forth in our brief, um, that just simply isn't true that Ms. Krebs ability to identify by her chosen name is grossly inhibited by her inability to obtain government recognition for that name. There are so many circumstances under which using a government issued ID is not a choice. Um, displaying that ID is a essential function of life, um, that people must engage in. And so if the government controls what appears on that ID, it necessarily controls Karen's speech, um, and how she can identify herself. Um, I see I'm, I'm a little low on time, so I'd like to reserve the remainder of my time for rebuttal, please. You may do so. Thank you, Ms. Nicholas. Uh, Mr. Morris, we'll recognize you. Thank you. Good morning. May it please the court. Um, this case is not about the first amendment. Uh, it's not about transgender rights. Um, as judge Rotner, um, perhaps indicated in her questioning of opposing counsel, what this case is really about, um, is quite simply whether, uh, a plaintiff in a section 1983 case who challenges a law under any constitutional basis here, the first amendment has a threshold burden of, of, of showing that the challenge law, uh, implicates a first amendment right here, a free speech right. Uh, Ms. Krebs has challenged a law that, uh, quite simply prohibits convicted sex offenders from changing their name. Um, but she failed to show in the district court briefing, uh, that that prohibition, uh, implicates any speech right whatsoever. The level of scrutiny to apply under the first amendment, it didn't address, uh, Ms. Krebs's, uh, novel limited public forum argument. Um, it just simply said under this court's precedent and under the Supreme court precedent and Clark, um, that every plaintiff under 1983, um, as a threshold burden has to show that there's some constitutional right at issue. So this court need not go any further than that. Um, the authority that Ms. Krebs cited, um, that could even conceivably address the threshold issue was a law review article, um, written by Ms. Kushner. But if you actually read the law review article, which of course is unprecedented in the first place, um, what Ms. Kushner said, and we pointed this out in our briefing below, um, was that a prohibition on a name change, uh, likely implicates no speech rights whatsoever. So not only did she not support, uh, her claim with, with case law, but the, um, non-binding law review article actually held to the contrary. Um, so the district court was correct in its, in its conclusion that it was under no obligation to analyze Ms. Krebs claims, um, on board from any legal footing whatsoever, um, much less a solid one. Um, so, um, I would ask, uh, that this court, um, let me ask you this as to the merits of the first amendment claim, uh, legal identification is required to participate fully in society. Um, from dare I say voting to entering federal buildings. Uh, I mean, so why is it a stretch to hold that the refusal to allow a name change, uh, impacts a person's right of expression, especially whereas here, the license reveals personal information about Krebs that she would choose to keep private. Well, judge Rovner, um, I would make a couple of points in response to that. Uh, number one, the law that's being challenged here is not an identification law. It's not a driver's license law. It's a law that nearly prohibits one action changing one's name. Ms. Krebs, uh, has a driver's license. So, um, I think you're correct to point out that we need a driver's license in life and we use it in various contexts. And Ms. Krebs, um, this law in no way prohibits Ms. Krebs, um, from voting or from paying taxes or engaging in anything that we do. That's not my question. It's, you know, the use of the name when voting, when showing the idea. Well, um, judge Rovner, uh, to, to that, I would say, um, number one, this court has held in the Moodle-Wackle case that a legal name is not forced on anyone by the state. It's a, it's a name that's given to you by your parents. So to the extent that, um, the court would consider her having to speak the name Kenneth under the compelled speech, uh, doctrine, um, it's not the government that is making her say the name Kenneth. That's just her legal name. Um, and as the court said in Moodle-Wackle, if she wanted to change her name legally to Karen, then she should have done so. Um, in that case, Moodle-Wackle, you know, it said that, um, Mr. Moodle-Wackle, who objected to the, to, uh, his legal name, because it sounded like a white man's name, the court responded by saying, you should have changed your name before you committed murder. Uh, here, Ms. Krebs, um, identified, came out as transgender in 1999. This law was not in effect in 1999. She had four years, uh, to legally change her name until the law went into effect in 2003. Um, and she did not do so. And then the other point I would make is the central theme running through all of the compelled speech cases, uh, Barnett, uh, Woolley, Riley, Janice, that the central theme is speaker autonomy, right? Each one of those cases involved a law that deprived the speaker of that autonomy. Um, here, Ms. Krebs, uh, is free to, um, explain the content of her speech. Um, she is free to silence her ID or she is free to, uh, remain silent. She doesn't have to say anything by virtue of this law. This law merely says that convicted sex offenders, um, are prohibited from changing their names. Um, now, uh, again, to the extent that the court wants to consider the, the merits, um, this law, um, um, is content neutral. And what it does is it prohibits conduct, not speech. So to the extent that there is, um, any first amendment scrutiny, uh, then the proper first amendment scrutiny would be, uh, intermediate scrutiny under us versus O'Brien. And what I would say there is this law fails that test, or excuse me, this law passes that test, um, for a couple of reasons. Um, number one, only inherently expressive activity, inherently expressive conduct, uh, is subject to any first amendment protection at all. And I would argue that changing one's name in and of itself is not inherently expressive as, as the Supreme Court, um, explained in the Rumsfeld case, which involved a group of law schools protesting, um, the military's, um, treatment of people who identified as, uh, uh, um, openly gay in the military. They, um, excluded military recruiters on that basis in protest of that policy. Um, and so Congress passed the Solomon amendment that said, if you do that, you're going to lose your federal funding. And so the law schools argued that that, um, it impinged upon their first amendment rights protest. And what the Supreme Court said was, um, that this law regulates conduct. It doesn't require the law schools to say anything. Um, and there's nothing inherently expressive about your conduct. It's, it's only when you explain why the military recruiters are not on campus, um, that we understand that you are exercising your right to protest the military's policy on homosexuals in the military. And so it, when a conduct has to be explained by further speech, it's not inherently expressive. Mr. Morris, isn't there a possibility though, that a name change could be expressive? I'm thinking of sports stars. Um, Ron Artest changes his name to meta world peace. Uh, uh, Lloyd free changes his name to world be free. I distinguish that from say, a religious name change, Louelle Cinder to Kareem Abdul Jabbar. But I, I think it strains it a bit to say that in the Artest and free examples, they weren't also trying to say something with their name, correct? Yes, I would concede that that's true. And in fact, uh, your honor, I was, um, thinking about this, um, when I was preparing for this argument and I would, I would concede as I think that, uh, the Supreme Court cases, um, discuss in O'Brien and in Johnson, uh, context matters, um, burning the flag in, in, in, in, or excuse me, burning the draft card in O'Brien was inherently expressive because of all of the other things, um, the, the protest, the speeches, the demonstration. So I think, um, to answer your point directly, I think that a name change, uh, could certainly be more expressive, uh, and perhaps get into this, uh, first amendment territory, uh, depending on the name change, um, in those sports examples, I think perhaps, um, uh, would be the case or someone could change their name to black lives matter, um, something like that. I think you would have a much stronger argument than just a name change, um, to something like Karen, um, which is a far cry from those examples you cited or the example that I cited. Um, the next point I would make under O'Brien is even if you, uh, were to assume for purposes of this argument, that a name change to Karen is  under O'Brien, which is, um, does still, is the government, um, uh, trying to further an important purpose and here it's not disputed that, um, the government is, um, in, in, in passing the name change prohibition, what it's doing is it is, um, trying to protect the community and protect our, our, our children, um, from those sex offenders who would try to change their name to disappear into our society. And in fact, um, we know that because in the cited materials, there's evidence in the form of a, of, um, a testimony from Senator Darling proposed, um, who testified in support of the law and what she said in her testimony was, um, at that time in 2003, the department of corrections, um, was currently uncertain, uh, of the whereabouts of about 2,900 sex offenders who were, um, on the registry, which is about one million sex offenders in Wisconsin. Um, and that the Waukesha police department had actually encountered a sex offender who had, uh, changed his name to avoid the registration requirements. Um, and what Senator Darling said was this law is designed to close that loophole and to make our communities safer. And so, um, there's an important governmental interest here. And then the only remaining question under O'Brien to, um, satisfy intermediate scrutiny is does this law further that interest? And the answer is yes, it does, because without this law, there is absolutely nothing that prohibits, um, the conduct such as, uh, changing one's name to, uh, avoid the registration requirements. There was nothing to, to stop this, this individual, uh, who was apprehended in Waukesha, um, from disappearing into society. And that's enough to satisfy intermediate scrutiny under O'Brien. Um, and finally, Krebs' limited public forum argument, um, is wholly novel and, uh, without any legal support. The only authority that Ms. Krebs cites, um, is the Rosenberger case. She doesn't really discuss that case. She, she merely, um, clings to, um, uh, one statement in the court's opinion that in that case, which involved a, uh, student activity fund at the University of Virginia, um, it was designed to encourage students to publish newspapers and engage in expressive activity. The court said in that case, the, uh, public forum was more metaphysical, uh, than a physical forum. And she quotes to that, and then she, um, applies it to her case without any further guidance or analysis. Um, there is no other authority that I could find and certainly no authority that she cited to, um, that applies the limited public forum doctrine to, uh, what is simply a name change procedural statute. The statute that she's saying is a limited public forum, uh, doesn't encourage anyone to change their names. It doesn't provide any incentives like the Rosenberger case did. Um, it merely says for those that want to change their names legally, these are the steps that you have to follow under the statute. That's not a limited public forum. Um, there's no evidence in the record, uh, that the government intended to create a limited public forum when it passed that law. And so this argument too must fail. Um, and so even if this court, uh, in, in, in summary were to consider Miss Krebs's arguments on the merits, um, much like her failure to support, uh, her claim, uh, with law below each one of these theories that she advances, um, is wholly unsupported by the authorities that she cites to. Um, and so for those reasons, I would ask that the court affirm the district court's judge, uh, judgment. Um, and if there are no other questions than I see the remainder of my time. Thank you, Mr. Morris. Ms. Nicholas, we'll go back to you for rebuttal. Thank you. I think it's very important for the court to, um, look at one of the statements that counsel just made, which is that in the absence of this name change restriction, there would be nothing to prevent somebody from changing their name, evading their registration requirement and disappearing into the community. That is categorically false. That conduct is a felony. It is a felony to fail to report changes in your identifying information. And what the Supreme Court made clear in Packingham is that the government cannot suppress lawful speech as the means to suppress unlawful speech. So really this name change statute is a solution in search of a problem. Um, the government of Wisconsin already prohibits the conduct that it claims the statute is aimed after. Um, and that was confirmed by the 30B6 witness who testified that nothing at all would change about what was reflected on Wisconsin's sex offender registry. Um, if Ms. Krebs was allowed to formally change her name. Um, second, with regard to the question of whether changing one's name is inherently expressive, um, changing one's name communicates something very simple that requires no further explanation. This is what I want to be called. Um, so whether you're changing your name because you are transgender because you've got, uh, you got married and you want to take your spouse's name, um, because you want to reflect a religious affiliation, um, changing your name, um, communicates a message that requires no further information. And it's that this is how I see myself. This is what I call myself. And this is what I want other people to call me. Um, so there's really no further message that has to be communicated than that for changing one's name to be seen as expressive and thus protected by the First Amendment. Um, so unless the court has any other questions. I have one more question for you, Ms. Nicholas. What's the evidence of an injury here to your client? So for example, um, Ms. Krebs is, um, questioned about the legitimacy of her identification. She, um, and that happened when she voted. Um, but what's the evidence in the record? I didn't see anything in the record saying she was questioned when she was voted about her identification. Well, of course, this just happened because she just voted for the first time in the primary. But you need an injury to have standing to proceed here. And there's certainly some speculation in her deposition testimony or in the evidence in the record. But what's the concrete injury that she suffered here? Well, two, three things, I guess. One is that she can't, um, effectively exercise her First Amendment right to call herself what she wants to be called. Two, it is the embarrassment. But how for a compelled speech theory, how would that matter? That the name that she, to which she strongly objects is something she must disclose. And every she has to show her ID, she's forced to disclose something that raises questions, causes her embarrassment. Um, and it forces her to say something she does not want to say. And that's going to be around for the rest of her life. So we'd ask that the district court or that this court reverse and remand to the district court, please. Thank you. Thank you to both counsel. The case will be taken to revisement.